**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCY**
**AT LOUISVILLE**


KEITH CHARLES                                                                    PLAINTIFF

v.                                                 CIVIL ACTION NO.   3:11-CV-553-H

PRINT FULFILLMENT SERVICES, LLC                                          DEFENDANT


### MEMORANDUM OPINION

Print Fulfillment Services, LLC, has filed a motion in which it asks this court to compel the plaintiff, Mr. Keith Charles, to submit written expert reports from three of his identified expert witnesses (docket no. 28).   Having considered the motion, all responses thereto, the oral argument of counsel, and supplemental information submitted directly to the court via email following the oral argument, the court will **GRANT** the motion in part, for the reasons stated herein.

### I.

Mr. Charles worked as the Controller at Print Fulfillment's offices for approximately two and a half years.   Mr. Charles asserts that he was subjected to age discrimination and fired in retaliation for complaints regarding Print Fulfillment's alleged violations of immigration and tax laws.   Mr. Charles has identified four expert witnesses whose opinions he intends to offer in support of his claims, but has produced a report in compliance with Federal Rule of Civil Procedure 26(a)(2)(B) for only one, the accounting firm of Mountjoy Chelton Medley, LLP.   The other three proffered experts are himself, Erica Johnson (who worked at Print Fulfillment while Mr. Charles was employed there), and an agent with U.S. Immigration and Customs Enforcement (ICE), which conducted an investigation of Print Fulfillment's employment records .

With respect to himself, Ms. Johnson, and the ICE Agent, Mr. Charles has provided only summaries of expected testimony, including the identification of their specific opinions and the basis therefore, and their resumes. Print Fulfillment asserts that the three witnesses should either be required to prepare and serve expert reports in full compliance with Federal Rule of Civil Procedure 26, or should be stricken as experts. Mr. Charles asserts that expert reports are not required, because none of the three witnesses at issue has been "retained or specifically employed by him." The court will analyze the applicability of these arguments to each witness.

## II.

As a preliminary matter, the court concludes that the relevant question regarding the applicability of Rule 26(a)(2)(B), is not whether money has changed hands, or whether an employment relationship otherwise exists, but whether the witness will provide expert witness testimony (*i.e.,* opinions about facts in dispute that are based on scientific, technical, or other similar specialized knowledge and were specifically developed in anticipation of trial)[1] as opposed to opinion testimony from lay witnesses (*i.e.,* testimony that is an aid to understanding that witnesses fact testimony, which is rationally based on the witnesses perception of the facts, but does not require any specialized knowledge).[2]

Nevertheless, this court is well aware that federal courts routinely permit treating physicians – who provide factual testimony, but also unquestionably rely on specialized knowledge to provide opinion testimony about the facts presented -- to testify about their specific treatment of a litigant without preparing expert reports. This is so, in large part, because testimony about past diagnoses and treatment typically is not developed specifically in anticipation of trial,

---

[1] *See* Fed. R. Civ. P. 26(a)(2)(B); Fed. R. Evid. 702.
[2] *See* Fed. R. Civ. P. 701.

but to heal the patient. And, the courts recognize how often treating physician testimony is necessary to the development of many different types of litigation and the widespread inefficiency that would result if doctors were routinely required to comply with Fed. R. Civ. P. 26(a)(2)(B) simply to explain what treatment was provided and why. Accordingly, when physicians are asked to provide medical opinion testimony about relevant facts not in their own treatment records or about matters not a part the treatment protocol they supervised (*e.g.*, testimony about whether another physician's treatment protocol was medically appropriate, or what a recommended future medical procedure or outcome might be), a report is required.

Each of the identified "expert" witnesses at issue in this matter is being offered for a combination of testimony based on their personal knowledge of events that occurred during Mr. Charles's employment with Print Fulfillment and their professional expertise. Mr. Charles asserts that they are all akin to treating physicians, because they will testify about the substance of their professional interaction with the Print Fulfillment during Mr. Charles's employment there. With respect to Mr. Charles and Ms. Johnson, the court disagrees.

Mr. Charles is an accountant and a former CPA, but did not have a valid license at the time he worked for Print Fulfillment. Nevertheless, he was the company's Controller and the performance of his job required specialized knowledge and training. He states he will testify, *inter alia*, that Print Fulfillment violated state and federal tax, immigration, and criminal laws during his employment there, and about his economic damages. He also states that his opinions are "based upon his professional education and experience in the field of Accounting, and his personal employment experience" with Print Fulfillment and "upon his examination of

Defendant's records, depositions of Defendant's employees, and document production."[3]   The

court therefore concludes that, by his own admission, he is expected to offer opinion testimony that

is closer to that contemplated by Fed. R. of Evid. 702 than 701.

Whether certain accounting practices and policies are advisable, widely used, or legal

requires specialized knowledge not commonly available to ordinary persons.   So, too, does

typical damages testimony, which is typically presented via vocational experts who use their

specialized knowledge and training to testify about the effects of life expectancy, education, work

history, and the like, to calculate lost future earnings in wrongful termination lawsuits. Moreover,

to the extent that Mr. Charles's testimony will be based on his examination of Print Fulfillment's

records, the depositions of its employees, and other documents produced during discovery, it

appears that such testimony may largely present opinions developed specifically during this

litigation. Perhaps it will not, but better to err on the side of caution in instances such as this when

the evaluation of each part and subpart of his opinion testimony would be far more wasteful of

both the litigants' and the court's resources than the preparation of a written report.

Similarly, Ms. Johnson's likely opinion testimony is more akin to that contemplated by

Fed. R. Evid. 702 than 701.   Ms. Johnson is an accountant who worked at Print Fulfillment during

the time period is the focus of this litigation, but is no longer employed there.   Like all of the

witnesses at issue, she is expected to present both fact and opinion testimony.   She states she will

"offer factual testimony regarding the Defendant and its practices"[4]  and opinion testimony

regarding whether specific acts and practices of Print Fulfillment violated state and federal law,

and that those opinions will be "based upon standard accounting practices, and based upon her

---

[3]  Pl's Expert Disclosure at 2.
[4]  Pl's Supp. Expert Disclosure re: Erica Johnson at 1.

professional education and experience in the field of Accounting."[5]  In addition, she states that her

testimony will be based not only on her own memory of events, but also upon her review of the

amended complaint and Mr. Charles's expert disclosure, including its attachments.[6]   Thus, like

Mr. Charles, she will rely on specialized training and knowledge in rendering her opinions and

may, after reviewing the amended complaint and Mr. Charles's disclosure, have based some of her

opinions on information not available to her during Mr. Charles's employment at Print Fulfillment.

 The proposed testimony of the ICE Agent, requires slightly different analysis.   Mr.

Charles wants an ICE agent to testify about an audit of Print Fulfillment's employment records and

to express an opinion about the legality of Print Fulfillment's actions.   Although Mr. Thomas

Perryman is the name assigned to the proposed witness for convenience, the actual designation is

for Mr. Perryman "or his successor."   Mr. Perryman is the special agent who oversaw the

investigation prompted by Mr. Charles's complaints and, if he remains employed by ICE, Mr.

Charles intends to ask him to offer both fact testimony based on his own recollection the

investigation and of meetings with Mr. Charles and representatives of Print Fulfillment, and

opinion testimony about the legality of what he observed.   Presumably, his successor will be

asked to testify only based upon his review of the records of the audit overseen by Mr. Perryman,

unless he has independent personal recollection of the events at issue.

 If the agent's testimony is so limited, no report is required. Although any opinion

testimony regarding the legality of Print Fulfillment's actions evaluated by the ICE audit certainly

requires specialized training and knowledge, Either ICE Agent, may testify regarding the relevant

laws at issue and whether the documents generated during the investigation establish that Print

---

[5] *Id.* at 2.
[6] *Id.* at 2.

Fulfillment violated any laws during the time period investigated. The ICE agent will be similar to a treating physician, because he will use his specialized knowledge to testify what ICE did and why those actions were taken with respect to an evaluation Print Fulfillment's practices and records during a discrete period of time. It is reasonable to expect that ICE would have taken the action it did and its investigating agents would formed the same opinions as they did regardless of whether this litigation occurred.   If the ICE agent is asked to review and opine about documents, practices or testimony not part of the audit Mr. Perryman oversaw, however, those opinions clearly will have been developed specifically for this litigation and, accordingly, an expert report will be required.

## III.

In conclusion, to the extent that any of the witnesses will testify only about their factual recollections of events that occurred during Mr. Charles's employment at Print Fulfillment, or their knowledge of the factual aspects of Print Fulfillment's policies and procedures, no expert report is required.   However, to extent that any of their testimony constitutes, as discussed above, opinion testimony that is based on specialized knowledge and has been developed in anticipation of the trial of this matter, the witness must prepare an expert report in full compliance with Federal Rule of Civil Procedure 26(a)(2)(B).

The court will enter an order consistent with this opinion.

DATE:


Cc:   Counsel of Record