UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:11-CV-00553-TBR

KEITH CHARLES,                                                    Plaintiff,

v.

PRINT FULFILLMENT SERVICES, LLC,                          Defendant.

## MEMORANDUM OPINION AND ORDER

In *Charles v. Print Fulfillment Services, LLC*, No. 3:11-CV-00553-TBR, 2015 WL 5786817 (W.D. Ky. Sept. 30, 2015), this Court granted summary judgment in favor of Defendant Print Fulfillment Services, LLC.  Now, Plaintiff Keith Charles asks the Court to reconsider that decision.  However, Charles identifies no change in controlling law and no newly discovered evidence.  Rather, he advances arguments almost identical to those raised in his prior filings.  The Court has reviewed its original opinion in light of any new or better arguments Charles has made.  Because it is satisfied with its original judgment, Plaintiff's Motion to Alter, Amend, and Vacate (R. 97) is **DENIED**.

## I.

The Court has set forth the relevant facts in its earlier opinion, *see Charles*, 2015 WL 5786817, at *1–5, but includes a short summary here too.  Keith Charles filed this lawsuit against his former employer, Print Fulfillment Services, LLC, alleging wrongful discharge and age discrimination.  *Id.* at *5.  PFS terminated his employment, Charles says, because he suggested that PFS's payroll practices violated Kentucky's tax and withholding laws, and because of his age.  *Id.* at *2–5, 6, 10.  The Court entered summary judgment in PFS's favor.

1

First, the Court held that Charles had no wrongful termination claim under either the refusal or protected-activity exceptions to Kentucky's employment-at-will doctrine. *See id.* at *6–10. Charles never refused to follow any employment-related directive concerning PFS's payroll practices. *Id.* at *7–8. That fact proved fatal to his refusal-based wrongful termination claim. Though Charles voiced his opinion about the alleged impropriety of those practices to his superiors, no right embodied in a well-established legislative enactment protects such internal reports. *Id.* at *9–10. Consequently, the Court granted summary judgment as to his protected-activity claim.

Second, the Court granted PFS summary judgment as to Charles' age-discrimination claim. *See id.* at *10–15. While Charles made out a prima facie case of age discrimination, PFS offered a legitimate, nondiscriminatory reason for terminating him—namely, his "numerous and repeated performance deficiencies." *Id.* at *13 (quoting R. 47-1 at 35) (internal quotation marks omitted). Charles did not proffer evidence sufficient to allow a reasonable jury to infer that PFS's reason for terminating him was a pretext to conceal age discrimination. *Id.* at *13–15. Accordingly, Charles' age discrimination claim failed as a matter of law.

## II.

Federal Rule of Civil Procedure 59(e) allows the Court to alter or amend its prior judgment on timely motion. Fed. R. Civ. P. 59(e). Generally speaking, a Rule 59(e) motion must be based on "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Schlaud v. Snyder*, 785 F.3d 1119, 1124 (6th Cir. 2015) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)) (internal quotation marks omitted). "The

purpose of Rule 59(e) is 'to allow the [Court] to correct its own errors,'" *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quoting *York v. Tate*, 858 F.2d 322, 326 (6th Cir. 1988)), not to rehash old arguments, *see Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998), or to present new ones, *see Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010).

## III.

Charles moves the Court to reconsider its prior decision granting summary judgment to PFS. His motion does not identify any newly discovered evidence or an intervening change in controlling law. Instead, repeating arguments almost identical to those raised in his prior filings, Charles tries to explain why the Court's judgment is clearly erroneous. The Court has reviewed its original opinion in light of any new or better arguments Charles has made. Having done so, the Court stands by its original decision for the reasons stated then and now.

### A.

### 1.

Previously, the Court held that Charles could not maintain a wrongful termination claim under the refusal exception to Kentucky's employment-at-will doctrine. *Charles*, 2015 WL 5786817, at *6–8. To sustain a cause of action under the refusal exception, this Court said, Charles must show (among other elements) that "he *refused* to undertake the allegedly illegal acts PFS supposedly asked of him." *Id.* at *8. Because Charles never did that, the Court granted summary judgment to PFS. *Id.*

Charles takes issue with the Court's reasoning. He insists that merely "object[ing] to" an illegal act is sufficient to make out a claim for wrongful discharge. R.

97-1 at 7–8 (Memorandum in Support of Motion to Alter, Amend, and Vacate).   In support of that proposition, Charles relies on *Northeast Health Management, Inc. v. Cotton*, 56 S.W.3d 440 (Ky. Ct. App. 2001), and *Burton v. Zwicker & Associates, PSC*, 978 F. Supp. 2d 759 (E.D. Ky. 2013), *aff'd*, 577 F. App'x 555 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1531 (2015).   But his reliance is misplaced.

In *Cotton*, for example, the Kentucky Court of Appeals held that the constructive discharge of two employees who refused to commit perjury supported a wrongful termination claim.  56 S.W.3d at 443–44, 447.   Likewise, in *Bourton*, the United States District Court for the Eastern District of Kentucky found an employee's termination actionable where the employer terminated him for "refus[ing] to commit perjury in the future."   978 F. Supp. 2d at 769.   Neither *Cotton* nor *Burton*, then, supports Charles' positon that a mere objection without a refusal to act gives rise to a wrongful termination claim.

## 2.

In addition, the Court concluded that Charles could not maintain a wrongful termination claim under the protected-activity exception to Kentucky's employment-at-will doctrine either.  *See Charles*, 2015 WL 5786817, at *9–10.   For Charles' termination to be actionable under the protected-activity exception, it must relate to the exercise of a "right embodied in a well-established legislative enactment."   *Id.* at *10.   Because Charles exercised no such right, the Court granted judgment to PFS as a matter of law. *Id.*

Charles disagrees.   *See* R. 97-1 at 9.   Again, he directs the Court to *Workforce Development Cabinet v. Gaines*, 276 S.W.3d 789 (Ky. 2008), which involved a public

employee's disclosure of alleged wrongdoing under the Kentucky Whistleblower Act, Ky. Rev. Stat. Ann. §§ 61.101 to .103.  He reads *Gaines* as announcing that the Act protects any employee—public or private—who makes an internal report of wrongdoing from retaliatory discharge.  *See* R. 97-1 at 9.

The Court rejected that argument before, *see Charles*, 2015 WL 5786817, at *9–10, and it does so again.  First, it is undisputed that Charles and PFS are private entities, so Charles has no rights to exercise under the Act.  *See Burke v. Shelby Energy Coop., Inc.*, No. 2011-CA-000657-MR, 2012 WL 1649107, at *3 n.2 (Ky. Ct. App. May 11, 2012); *see also Beach v. ResCare, Inc.*, No. 2004-CA-002559-MR, 2005 WL 2174404, at *3 (Ky. Ct. App. Sept. 9, 2005) (holding Kentucky Whistleblower Act provided no protection to employee who was "not a public employee; . . . did not report his employer's violations to an appropriate body; and . . . was not discharged for making a report regarding his employer" (emphasis omitted)).[1]  Second, it is well-established that an employee's report of "illegal activity to those other than public authorities is not protected activity under the public policy exception" generally.  *Zumot v. Data Mgmt. Co.*, No. 2002-CA-002454-MR, 2004 WL 405888, at *2 (Ky. Ct. App. Mar. 5, 2004); *see also Airdrie Stud, Inc. v. Reed*, Nos. 2001-CA-001397-MR, 2001-CV-001396-MR, 2002-CA-000357-MR, 2003 WL 22796469, at *3–4 (Ky. Ct. App. Nov. 26, 2003) (holding internal report of drug and alcohol use insufficient "to sustain an action for wrongful discharge"); *accord Chavez v. Dakkota Integrated Sys., LLC*, 832 F. Supp. 2d 786, 803 (W.D. Ky. 2011) (holding that to claim protection, an employee "must present evidence that he brought his complaint to the attention of public authorities, and not just [to]

---

[1] Even assuming that the Act applied to Charles, however, his internal report would not trigger the Act's protections.  *See Pennyrile Allied Cmty. Servs., Inc. v. Rogers*, 459 S.W.3d 339, 346 (Ky. 2015), *as modified* (Mar. 3, 2015), *and reh'g denied* (May 14, 2015).

management"); *cf. Foster v. Jennie Stuart Med. Ctr., Inc.*, 435 S.W.3d 629, 635 (Ky. Ct. App. 2013). Consequently, the Court stands by its prior holding.

## B.

### 1.

Next, the Court held that Charles' age discrimination claim could not succeed under either a direct or circumstantial evidence theory. *See Charles*, 2015 WL 5786817, at *10–15. First, the Court found one uncorroborated and isolated comment by Brett Heap, the General Manager of PFS, to be insufficient to constitute direct evidence of age-related animus. *Id.* at *10–12. Second, while Charles made out a prima facie case of age discrimination, PFS offered a legitimate, nondiscriminatory reason for terminating him—namely, his "numerous and repeated performance deficiencies." *Id.* at *13 (quoting R. 47-1 at 35) (internal quotation marks omitted). Because Charles did not proffer evidence sufficient to allow a reasonable jury to infer that PFS's reason for terminating him was a pretext to conceal age discrimination, the Court entered judgment for PFS. *Id.* at *13–15.

Charles tries to establish pretext by demonstrating that he was treated differently than similarly-situated employees. "Demonstrating pretext using this method 'ordinarily . . . consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.'" *Jackson v. VHS Detroit Receiving Hosp.*, No. 15-1802, slip op. at 12 (6th Cir. Feb. 23, 2016) (alteration in original) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)). "To be similarly situated, 'the individuals with whom the [employee] seeks to

6

compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards[,] and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Exact correlation is not required; instead, the employee and putative comparator "must be similar in all of the *relevant aspects*." *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003) (quoting *Ercegovich*, 154 F.3d at 352) (internal quotation marks omitted).

In this case, Charles attempts to compare his treatment to that of his younger replacement, Christina Greenwell. *See* R. 97-1 at 4; *see also* R. 77 at 9, 12, 33 (Response to Motion for Summary Judgment). Charles points out that Greenwell supposedly made some of the same errors as he did. Specifically, Charles alleges that Greenwell untimely processed payroll on at least one occasion, *see* R. 77 at 33 (citing R. 68-1 at 90–92 (Miller's Deposition)), and that she failed to timely book a series of invoices, *see id.* at 12 (citing R. 72-1 at 141 (Khalifa's Deposition)). According to Charles, his supervisor Marwan Khalifa never disciplined or terminated Greenwell for her errors. *See* R. 97-1 at 4. He submits such differential treatment is "evidence of a discriminatory bias." *Id.*

For several reasons, Charles argument misses the mark. First, Charles ignores the fact that Greenwell assumed additional job responsibilities. "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated." *Hatchett v. Health Care & Ret. Corp. of Am.*, 186 F. App'x 543, 548 (6th Cir. 2006) (citing *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004)). Here, in addition to the duties associated with Charles' position, Greenwell also

"accrued responsibilities associated with shipping and accounts payable." R. 68-1 at 90. It is not entirely clear, then, that Greenwell qualifies as similarly situated to Charles. *See Hatchett*, 186 F. App'x at 548 (holding comparator not similarly situated to plaintiff, even though both held the same position, because of differences in job responsibilities). Her more expansive role is a differentiating circumstance that PFS may properly consider in its business judgment.

Second, with respect to Greenwell's alleged performance errors, the record is not as clear as Charles suggests. Take the invoice issue, to start. Khalifa instructed Charles to record a series of invoices, but Charles never complied. *See* R. 72-1 at 139–42. Charles asserts that Greenwell committed the same error regarding the same invoices. *See* R. 77 at 12 (citing R. 72-1 at 141). Yet, Khalifa testified that he could not recall whom he asked to record the invoices following Charles' termination. *See* R. 72-1 at 141 ("I requested my staff record [the invoices]. I don't remember who specifically recorded them, but eventually they did get recorded."). It makes some sense, then, that Khalifa could "not recall" if he had disciplined Greenwell for the invoice issue. *Id.* at 141–42. Similarly, while Miller testified about the isolated payroll processing issue, he had "no idea" if Greenwell "was disciplined in any way" for it. R. 68-1 at 92. Even viewing it in a favorable light, Charles reads the record too generously.

Third, Charles' performance deficiencies are far from substantially identical to Greenwell's issues. To determine whether such performance issues are "substantially identical," the Court focuses "on the severity of the differently treated employees' actions." *Jackson*, slip op. at 13 (citing *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 350 (6th Cir. 2012)). With regard to Charles' job performance, the Court addressed that

argument before, *see Charles*, 2015 WL 5786817, at *4–5, and sees no reason to do so again.[2]   It suffices to say that Greenwell's job-related issues come nowhere near the magnitude of Charles' deficiencies.   Because Greenwell is not similarly situated to Charles, PFS's differential treatment of the pair does not establish pretext.[3]

## 2.

In addition, Charles points to the successive terminations of Robert "Dale" Miller (fifty-eight years of age) and Erica Johnson (fifty-seven years of age) as illustrating "a pattern of disparate treatment," which supports "an inference of age discrimination."   R. 97-1 at 3 (citing R. 75-1 at 72 (Johnson's Deposition); R. 68-1 at 13); *see also* R. 77 at 30.   However, Charles provides no evidence about the context surrounding either termination.   Consequently, there is nothing from which to draw a reasonable inference of age discrimination.

For example, Charles does not identify the number and age of other employees PFS terminated during the relevant time period.   *Cf. Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 622 (6th Cir. 2006) ("Appropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against individual members of the class." (quoting *Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir. 1975))).   More importantly, he says nothing about who made the decision to terminate Johnson or Miller,

---

[2] On a related note, Charles points to the fact that he worked at PFS for three years without discipline as evidence of pretext. R. 97-1 at 5.   "However, a showing of a good employment record is not relevant in determining whether an adverse employment decision was a pretext for age discrimination." *Hughey v. CVS Caremark Corp.*, —— F. App'x ——, ——, 2015 WL 6123550, at *4 (6th Cir. 2015) (citing *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 286 (6th Cir. 2012)).

[3] Again, Charles asserts that Khalifa admitted the issues that he identified with Charles' job performance were insufficient to warrant his termination. R. 97-1 at 7. Charles mischaracterizes Khalifa's testimony.   While Khalifa said no *single* issue would justify discharging Charles, he said no such thing about those issues in the *aggregate*. *See* R. 72-1 at 74–75, 92–93.

or about the age or identity of Miller's replacement.  The record contains very little regarding the reasons for Johnson and Miller's terminations too.[4]  "Absent evidence of the circumstances surrounding [Miller and Johnson's] departure from [PFS]," and of whom (if anyone) came to fill those positions, there is nothing to raise "a reasonable inference of age discrimination."  *Block-Victor v. CITG Promotions, L.L.C.*, 665 F. Supp. 2d 797, 809 (E.D. Mich. 2009).

### 3.

Charles' remaining arguments rest on misconceptions of the record.  For example, Charles says that Miller contradicted Khalifa's testimony that Khalifa verbally reprimanded Charles.  R. 97-1 at 5 (citing R. 68-1 at 13).  Upon reviewing Miller and Khalifa's deposition transcripts, however, the Court cannot discern a conflict.  Miller testified that he never disciplined Charles and that he had no knowledge about any other possible discipline.  R. 68-1 at 13.  Just because Miller knew nothing about Khalifa's conversations with Charles, however, does not mean those conversations never happened.

In addition, Charles labels Heap as PFS's "sole decision maker," R. 97-1 at 3, and insists that no one besides Heap "had the authority" to terminate him, *id.* at 5 (citing R. 55-1 at 26–27, 122 (Heap's Deposition); R. 54-1 at 13, 15, 27 (Barnum's Deposition)). Yet, Heap testified that Dale Ford, Fletch Faircloth, Paul Barnum, Robert Miller, and Bill Morrison all came to mind as persons with the authority to make "a decision regarding the hiring, firing, or daily job activities of Keith Charles."  R. 55-1 at 26–27.  While Barnum testified that Heap (as the General Manager of PFS) had the authority to countermand his subordinates' decisions, he recognized that "other people [besides Heap]

---

[4] While Johnson expressed her personal opinion that she felt PFS fired her because of her age, R. 75-1 at 71–72, she admitted moments later that she had "nothing to prove it," *id.* at 74.

make final decisions" for PFS.  R. 54-1 at 14–15.  In short, the Court is satisfied with its original judgment as to Charles' age discrimination claim in all respects.

## IV.

**IT IS HEREBY ORDERED** that Plaintiff Keith Charles' Motion to Alter, Amend, and Vacate (R. 97) is **DENIED**.

**IT IS SO ORDERED.**

Date:

cc:     Counsel of Record

11